EDWARD SIMS, Plaintiff-Appellant, v. TEEPAK, INC., Defendant-Appellee.

Fourth District   No. 4—85—0722

Opinion filed May 29, 1986.

Manion, Janov, Edgar, Devens & Fahey, Ltd., of Danville (Rick E. Janov, of counsel), for appellant.

Sebat, Swanson, Banks, Garman & Townsley, of Danville (Robert J. Banks, Jr., of counsel), for appellee.

JUSTICE MORTHLAND delivered the opinion of the court:

In this appeal we are asked to construe section 2—621 of the Code of Civil Procedure (the Code) (Ill. Rev. Stat. 1983, ch. 110, par. 2—621) where an employee who had already obtained a workers' compensation award filed a products liability action against his employer. That suit essentially sought to discover the manufacturer of the machine upon which he sustained his job-related injuries.

The plaintiff, Edward Sims, was injured on April 1, 1983, while operating a F. C. Evaporator machine at the defendant's Danville plant. He filed a claim pursuant to the Workers' Compensation Act (the Act) (Ill. Rev. Stat. 1981, ch. 48, par. 138.1 *et seq.*), and received a lump-sum settlement as compensation for his injuries and time lost at work.

Subsequently, on February 19, 1985, the plaintiff brought an action sounding in products liability against his employer "pursuant to" section 2—621. Section 2—621 permits a "certifying defendant" who is not the manufacturer to be dismissed from a strict liability in tort action once that defendant has filed an affidavit identifying the actual manufacturer of the product which allegedly caused injury. Ill. Rev. Stat. 1983, ch. 110, pars. 2—621(a), (b).

The defendant responded to the complaint on May 8, 1985, by filing a motion to dismiss pursuant to section 2—619 of the Code (Ill. Rev. Stat. 1983, ch. 110, par. 2—619). In its motion to dismiss, the defendant averred that it did not design, manufacture or sell the ma-

chine involved in the incident. In any event, according to the defendant, plaintiff had no cause of action against his employer because of the exclusive remedy provision of the Workers' Compensation Act. Ill. Rev. Stat. 1983, ch. 48, par. 138.5(a).

In the alternative, defendant answered that the cause should be dismissed pursuant to section 2—621. In compliance with that statute, the defendant attached the affidavit of Raymond D. Burtner, vice-president of Teepak, which certified the Whiting Corporation as designer of the machine. Burtner reiterated in his affidavit that plaintiff had already received a lump-sum settlement under the Act. The affidavit further stated the defendant had done nothing to alter the machine except install an electric motor and metal shield.

Plaintiff thereupon filed a motion to amend the complaint to add count II naming the Whiting Corporation as defendant. After a hearing to consider both motions before it, the trial court on October 11, 1985, granted the defendant's motion to dismiss and denied the plaintiff's motion to file an amendment to the complaint. The court found the plaintiff had no right to recover damages against his employer, given the exclusive remedy provision of the Act. As the plaintiff could not maintain that action, the court also found section 2—621 of the Code wholly inapplicable. In the absence of any valid cause of action, the court ruled that the plaintiff's motion to amend could not be granted.

Integral then to the resolution of this matter is an interpretation of section 2—621 of the Code under the facts as well as its interplay with section 5(a) of the Workers' Compensation Act (Ill. Rev. Stat. 1983, ch. 48, par. 138.5(a)). Section 2—621(a) states in part:

"Product liability actions. (a) In any product liability action based in whole or in part on the doctrine of strict liability in tort commenced or maintained against a defendant or defendants *other than the manufacturer*, that party shall upon answering or otherwise pleading file an affidavit certifying the correct identity of the manufacturer of the product allegedly causing injury, death or damage." (Emphasis added.) Ill. Rev. Stat. 1983, ch. 110, par. 2—621(a).

Under section 2—621(b), once a plaintiff has filed a complaint against the manufacturer or manufacturers as disclosed, and once those parties have been required to answer or otherwise plead, "the court shall order the dismissal of a strict liability in tort claim against the certifying defendant or defendants." (Ill. Rev. Stat. 1983, ch. 110, par. 2—621(b).) This language makes dismissal of a "certifying defendant" mandatory when that party has complied with the requirements

contained in subsections (a) and (b). However, even after such dismissal, a plaintiff may move to vacate the order of dismissal and reinstate the certifying defendant or defendants if the plaintiff can show any one of five delineated fact settings. Ill. Rev. Stat. 1983, ch. 110, pars. 2—621(b)(1) through (b)(5).

In considering the purpose of section 2—621, we note first that all persons in the distributive chain, including suppliers, distributors, wholesalers, and retailers, are liable for injuries resulting from a defective product in a products liability action. (*Hammond v. North American Asbestos Corp.* (1983), 97 Ill. 2d 195, 206, 454 N.E.2d 210, 216; *Thomas v. Kaiser Agricultural Chemicals* (1980), 81 Ill. 2d 206, 214, 407 N.E.2d 32, 36.) Liability results regardless of whether any of these parties actually knew of the defect, contributed to the defect, or failed to discover the defect. Imposition of liability is justified on the grounds that the position of these parties in the marketing process enables them to exert pressure on the manufacturer to enhance the safety of the product. (*Dunham v. Vaughan & Bushnell Manufacturing Co.* (1969), 42 Ill. 2d 339, 344, 247 N.E.2d 401, 403-04.) Thus, regardless of the nature of the commercial transaction, and even though it did not create the defect, a seller who puts a defective product into the stream of commerce runs the risk of being held strictly liable to an injured user. *Hammond v. North American Asbestos Corp.* (1983), 97 Ill. 2d 195, 454 N.E.2d 210; *Crowe v. Public Building Com.* (1978), 74 Ill. 2d 10, 13, 383 N.E.2d 951.

Arguably in response, section 2—621 was enacted to allow sellers to opt out of such litigation by certifying the identity of the manufacturer of an allegedly defective product. Ostensibly, section 2—621 could also facilitate discovery of manufacturers where such are unknown to the injured user. The main thrust of the statute, however, remains that of a "seller's exception"; the seller may still be sued in the first instance, but may identify an upstream defendant (the manufacturer) and thus escape ultimate liability where the seller has done nothing to create or contribute to the defect.

In the matter before us now, however, it is not a seller that is being sued; rather, the action arises out of an injury incurred in an employment setting. Thus, the issue to be resolved is whether an employer may be sued under section 2—621 by an employee who wishes to determine the manufacturer of an allegedly defective product where that employee has already obtained a workers' compensation award. We think not.

■ Under section 5(a) of the Act, no common law or statutory right to recover damages from an employer, other than the statutory

compensation provided therein, is available to an employee for injuries sustained during the course of employment. (Ill. Rev. Stat. 1983, ch. 48, par. 138.5(a); *Gannon v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.* (1958), 13 Ill. 2d 460, 150 N.E.2d 141.) This "exclusive remedy" provision is an essential element of the comprehensive workers' compensation scheme. The Act establishes a system of liability without fault while abrogating the common law defenses of contributory negligence, assumption of the risk, and the fellow-servant doctrine. In exchange, the Act requires an injured employee to give up certain elements of damages recoverable in common law or statutory actions by prohibiting these actions where injuries are received during the course of employment. (*Gannon v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.* (1958), 13 Ill. 2d 460, 150 N.E.2d 141; *Rosales v. Verson Allsteel Press Co.* (1976), 41 Ill. App. 3d 787, 354 N.E.2d 553.) The exclusive remedy provision is "part of the *quid pro quo* in which the sacrifices and gains of employees and employers are to some extent put in balance, for, while the employer assumes a new liability without fault, he is relieved of the prospect of large damage verdicts." 2A A. Larson, Workmen's Compensation sec. 65.11, at 12—1 through 12—6 (1983).

In recent years, however, this principle has been ameliorated somewhat by the recognition of a valid third-party cause of action for contribution against the employer brought on behalf of a manufacturer or other party legitimately sued in a products liability action. (*Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 374 N.E.2d 437, *cert. denied* (1978), 436 U.S. 946, 56 L. Ed. 2d 787, 98 S. Ct. 2849; see also Ill. Rev. Stat. 1983, ch. 70, pars. 301, 305.) In *Skinner*, the supreme court recognized an employer may be liable to a manufacturer seeking contribution in a strict products liability action for conduct amounting to misuse of the product or assumption of the risk. *Skinner* has since been codified by the legislature. Ill. Rev. Stat. 1983, ch. 70. pars. 301, 305.

■ Plaintiff here first argues that the defendant could still be sued under the dual capacity doctrine, which is recognized in Illinois as a limited exception to the exclusive remedy provided for by the Act. Plaintiff asserts that this action was brought solely to ascertain the designer or manufacturer of the machine upon which he was injured so that a valid products liability action could be maintained against the unidentified party. Thus, plaintiff contends that the defendant has valuable information necessary to sustain a products liability action, and that this information is available to the employer independent of the employee-employer relationship. The plaintiff con-

cludes that his employer, having access to this information, "is in a dual capacity," and could be brought into a suit "for discovery purposes only."

Plaintiff's reliance on the dual capacity doctrine is patently incorrect. An employer may become liable in tort to his employee where the controversy involves a separate legal *persona* or entity of the employer arising independent from and unrelated to those obligations flowing out of the employment relationship. (*Sharp v. Gallagher* (1983), 95 Ill. 2d 322, 447 N.E.2d 786; *Smith v. Metropolitan Sanitary District* (1979), 77 Ill. 2d 313, 396 N.E.2d 524; *Toth v. Westinghouse Elevator Co.* (1983), 114 Ill. App. 3d 905, 449 N.E.2d 1005.) A complaint must allege the existence of a second capacity under which the employer's status as an employer is coincidental. Merely alleging a separate theory of liability against an employer is insufficient. (*Goetz v. Avildsen Tool & Machines, Inc.* (1980), 82 Ill. App. 3d 1054, 403 N.E.2d 555.) Moreover, the employer must also be in the business of selling the allegedly defective product to be held strictly liable in tort. (*Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 210 N.E.2d 182; *Goetz v. Avildsen Tool & Machines, Inc.* (1980), 82 Ill. App. 3d 1054, 403 N.E.2d 555.) Thus, the plaintiff's bare assertion here that the defendant is holding required information does not allege facts necessary to establish distinct duties and obligations generated by a second capacity. Furthermore, plaintiff does not allege that the defendant was at all engaged in selling the machine in question.

■ Nevertheless, plaintiff urges that his cause of action should be sustained on the basis of fairness or public policy. Plaintiff asserts that, without recognition of a cause of action under section 2—621, an employer could effectively circumvent any potential third-party exposure in products liability actions where the employer knows the identity of a manufacturer or designer, but refuses to disclose that information to an injured employee. As the argument goes, the employee would consequently be unable to maintain an action against the manufacturer, and the employer would save himself from any third-party liability for contribution. Plaintiff again stresses he is not seeking damages from his employer, but is instead suing according to what he terms are the "discovery provisions" of section 2—621. Plaintiff concludes that recognition of such an action would not contravene the intent of section 5(a) of the Act. Ill. Rev. Stat. 1983, ch. 48, par. 138.5(a).

Plaintiff's contentions, though they raise an interesting scenario, are unavailing here. While the gist of plaintiff's argument is that he is not seeking damages, but rather is suing for discovery of the manu-

facturer pursuant to section 2—621, a reading of that section indicates it does not authorize any independent cause of action. Section 2—621(d) states:

> "(d) Nothing contained in this Section shall be construed to grant a cause of action in strict liability in tort *or any other legal theory*, or to affect the right of any person to seek and obtain indemnity or contribution." (Emphasis added.) Ill. Rev. Stat. 1983, ch. 110, par. 2—621(d).

Therefore, it is apparent that this section does not create a cause of action in and of itself. There must still exist a valid and pending action for a party to be able to institute "discovery" under this provision. We do not construe section 2—621 as allowing a complaint to be filed simply so that a party may invoke its provisions. Section 2—621 is not analogous to section 2—402 of the Code, which provides for "respondents in discovery" in medical malpractice actions who may later be added as defendants if evidence discloses the existence of probable cause to do so. Ill. Rev. Stat. 1983, ch. 110, par. 2—402.

■ Plaintiff filed his claim for workers' compensation, and obtained a lump-sum settlement paid out pursuant to the Act. Since the plaintiff has collected compensation on the basis that his injuries were compensable under the Act, and pursuant to an agreement executed in lieu of a common law or statutory claim, that settlement attains the status of an award. (*Ahlers v. Sears, Roebuck Co.* (1978), 73 Ill. 2d 259, 383 N.E.2d 207.) Plaintiff is now precluded from subsequently suing for civil damages. (*Collier v. Wagner Castings Co.* (1980), 81 Ill. 2d 229, 408 N.E.2d 198; 2A A. Larson, Workmen's Compensation sec. 67.32 (1983).) He also has no separate and independent "discovery" cause of action under section 2—621. We therefore hold that the defendant's motion to dismiss was properly granted.

■ Furthermore, we also hold that the trial court did not err when it denied the plaintiff's motion to amend the complaint to add a new defendant. First, without a valid and recognized cause of action, and without a named defendant remaining, there was nothing left to be amended. Second, the plaintiff could not amend his complaint to add a second count naming the Whiting Corporation as defendant due to the running of the applicable statute of limitations. Plaintiff's injury occurred on April 1, 1983; the applicable two-year statute ran on April 1, 1985. Plaintiff's motion to amend was not filed until May 21, 1985, or after the two-year limitations period.

In his brief on appeal, and particularly during oral argument, plaintiff asserted that section 2—621 provides for a tolling of the statute of limitations as to any unnamed manufacturer once a complaint

is filed. However, upon reading the entire statute, we conclude to the contrary. Subsection (a) states that where a products liability action is commenced against a defendant or defendants "other than the manufacturer," then that party may file an affidavit certifying the correct identity of the manufacturer of the product. (Ill. Rev. Stat. 1983, ch. 110, par. 2—621(a).) This section goes on to read that commencement of the action *"against such defendant or defendants* shall toll the applicable statute of limitation and statute of repose relative to the defendant or defendants." (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 110, par. 2—621(a).) Thus, the statute of limitation is clearly tolled only as to those defendants named in the original action, and not the heretofore unnamed manufacturer. As further support for this conclusion, we need only look to subsection (b), which provides that a certifying defendant can be reinstated to the action after dismissal where the applicable statute of limitation arises to bar the assertion of a cause of action against the manufacturer. (Ill. Rev. Stat. 1983, ch. 110, par. 2—621(b)(1).) Clearly, then, there is no provision in section 2—621 permitting the statute of limitations as to a manufacturer to be tolled.

Finally, we address the otherwise legitimate concern raised by the plaintiff herein that in some circumstances an employer might refuse to disclose the manufacturer of a product in order to avoid potential third-party liability. Although inappropriate under the particulars of this matter, we do envision an instance whereby section 2—621 could afford an injured worker with the opportunity to discover the manufacturer from an uncooperative employer. As the supreme court recently recognized in *Doyle v. Rhodes* (1984), 101 Ill. 2d 1, 461 N.E.2d 382, the Workers' Compensation Act provides employers with a defense against any action that may be asserted against them in tort. However, that defense is an affirmative one which must be established by the employer, and which may be waived if not asserted before the trial court. The court went on to state:

> "Thus, the plaintiff may recover a tort judgment against his employer for a work-related injury if the employer fails to raise the defense the Workers' Compensation Act gives him [citation], and on occasion the employer may choose not to raise it in the hope that the plaintiff will be unable to prove negligence to a jury's satisfaction. The potential for tort liability exists until the defense is established." 101 Ill. 2d 1, 10-11, 461 N.E.2d 382, 387.

In theory, at least, an injured employee could possibly maintain a products liability action naming his employer as defendant before

making any claim under the Act. In such a case, section 2—621 might be invoked to determine the identity of the manufacturer. However, this setting was not present here.

For the foregoing reasons, we affirm the judgment of the circuit court of Vermilion County granting the defendant's motion to dismiss and denying the plaintiff's motion to amend his complaint.

Affirmed.

GREEN and SPITZ, JJ., concur.